## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**HARL GARRETT**                                                          **PETITIONER**

### No. 4:20-cv-01252 LPR/PSH

**DEXTER PAYNE, Director,**
**Arkansas Division of Correction ("ADC")**                 **RESPONDENT**

### FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommended Disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of it. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Harl Garrett ("Garrett"), who is in the custody of the ADC, filed his *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. §2254 on October 19, 2020. In it, Garrett challenges his 2019 conviction in Garland County Circuit Court for sexual assault in the second degree. The conviction followed a jury trial

where Garrett was represented by retained counsel Ben Hooten ("Hooten"). Garrett was sentenced to twenty years' imprisonment.

### *Original Petition and Response*

In his original petition, Garrett advanced three claims for relief in his petition:  (1) Hooten broke their contractual agreement by failing to represent Garrett on direct appeal; (2) Prosecutorial misconduct (allowing the victim to testify); and (3) Prosecutorial misconduct (failure to fully investigate the case). Garrett concedes that his petition was filed more than one year after his conviction became final – he explains that his appeal was denied in April 2020, and he later filed a Rule 37 petition (denied in September 2020) in an attempt to exhaust his state court remedies before the one year limitation period expired.  Doc. No. 2, page 13.

Respondent Dexter Payne ("Payne") argued that Garrett's first claim was procedurally defaulted due to his failure to raise his counsel's performance in a timely Rule 37 petition, and that claims two and three were procedurally defaulted due to Garrett's failure to raise the claims on direct appeal.  In the alternative, Payne argued claims two and three were without merit.  Doc. No.  11.

### *Amended Petition and Response*

Walter Craig Lambert, appointed to assist Garrett, filed an amended petition for writ of habeas corpus, alleging that Garrett was denied his right to a direct appeal and his right to counsel on direct appeal.  Doc. No.  22

In response, Payne now contends that Garrett's claims are barred by the statute of limitations.[1]  Doc. No. 23.

### *Relevant Procedural History*

The following dates are relevant in calculating whether Garrett filed his federal habeas petition in a timely fashion and, if not, whether the statute of limitations was tolled.

* **August 26, 2019** – Garrett, represented by retained counsel Hooten, was convicted in Garland County Circuit Court.  Doc. No.  11-14, page 327.

* **August 27, 2019** – Garrett was sentenced by the trial court.  Doc. No.  11-2. At this time, the trial court advised Garrett of his appellate rights, including the 30 day deadline to file a notice of appeal.

---

[1]In an Order dated December 6, 2021, the Court stated that speculation was required to determine if the petition was timely filed.  Doc. No. 27.  This was incorrect.  Speculation was not required since Garrett conceded he was aware of the factual predicate of his claim on or about October 8, 2019.  Doc. No. 26, page 2.  This date is more than one year prior to the filing of Garrett's federal habeas petition.

* **August 28, 2019** - The trial court's sentencing order was filed.  Doc. No. 11-2.  The order affirms that Garrett was notified of his appellate rights.

* **September 11, 2019** – Hooten filed a motion to be relieved as counsel, noting that Garrett desired to appeal the conviction.  This motion was electronically filed and hand-delivered to Garrett.  Doc. No.  11-3;

  **September 11, 2019** – Hooten filed an amended motion to be relieved, adding that Garrett had been given copies of the *Rules of Appellate Procedure—Criminal*, and *Rules of the Supreme Court and Court of Appeals of the State of Arkansas*.  This motion was electronically filed and hand-delivered to Garrett.  Doc. No.  11-15; and

  **September 11, 2019** – The trial court granted Hooten's amended motion to withdraw.  The trial court's order was **not** served on Garrett.  Doc. Nos. 11-4 & 11-5.

* **September 30, 2019** – The time for filing a notice of direct appeal expired.

* **October 8, 2019 (on or about)** – Garrett received a letter from trial counsel informing him he was "on his own" regarding an appeal and enclosing a *pro se* Notice of Appeal for Garrett to use.  Doc. No.  26, page 2.

* **October 15, 2019** – Garrett signed a Notice of Appeal and Designation of the Record.   Doc. No.  11-7, pages 11-13.

\*    **November 1, 2019** – Hooten sent a letter returning papers and informing Garrett that Hooten could not file a motion to proceed *in forma pauperis* and a motion for belated appeal, and directing Garrett to route the pleadings through the prison mail system.  Doc. No.  11-7, page 16.

\*    **December 16, 2019** – Garrett filed motions in Garland County and with the Arkansas Supreme Court seeking *in forma pauperis* status and permission to file a belated appeal.  Doc. No.  23, page 2.

\*    **December 23, 2019** – The Arkansas Supreme Court returned the documents to Garrett, informing him that he must submit certified copies of the sentencing order and other documents, such as the order relieving his trial attorney from the case.  Doc. No.  11-6, page 2.

\*    **March 25, 2020** – Garrett filed a timely motion for belated appeal with the Arkansas Supreme Court.  Doc. No.  11-7.

\*    **April 14, 2020** – The Arkansas Court of Appeals summarily denied the motion for belated appeal.  Doc. No.  11-8.

\*    **August 3, 2020** – Garrett filed a Rule 37 petition with the Garland County Circuit Court.  Doc. No.  11-9.

\*    **September 17, 2020** – The Rule 37 petition was dismissed as untimely.  Doc. No.  11-10.  (Garrett did not appeal this decision.)

5

\*      **October 13, 2020** - According to Garrett, he placed a motion to proceed *in forma pauperis* and his federal habeas petition in the prison mail system. Doc. No. 26 at 2.

\*      **October 19, 2020** – Garrett's motion to proceed *in forma pauperis* and federal habeas petition were filed with this Court.  The motion to proceed *in forma pauperis* was dated October 13, 2020, and the petition for writ of habeas corpus was neither signed nor dated.  Doc. Nos. 1 & 2.

### *Statute of Limitations*

Payne contends that the statute of limitations bars consideration of the claims advanced in the amended petition.  The parties have fully briefed this argument.

28 U.S.C. § 2244(d) imposes a one year period of limitation on petitions for writ of habeas corpus:

> (1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if

6

the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The Court is required to answer three questions in determining if Garrett timely sought federal habeas corpus relief: (1) When did the limitations period begin?; (2) In the year after the onset of the limitations period, was the period paused due to statutory tolling?; and (3) In the year after the onset of the limitations period, was the period paused due to equitable tolling?  The Court concludes the limitations period began on October 8, 2020, and expired one year later without any time excluded due to statutory or equitable tolling.  As a result, Garrett's October 19, 2021, petition for federal habeas corpus relief was untimely, and the Court recommends dismissal on that basis.

7

### *Start of the Limitations Period*

The statute provides that the limitations period starts from the latest of four dates. 28 U.S.C. § 2244(d)(1)(A)–(D). In this instance, the parties agree that 2244(d)(1)(D) is the governing provision – "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The factual predicate constitutes the "vital facts underlying" the claims. *Jimerson v. Payne*, 957 F.3d 916, 924 (8th Cir. 2020) (quoting *McAleese v. Brennan*, 483 F.3d 206, 214 (3rd Cir. 2007).

Garrett's claims, that he was denied counsel on direct appeal and that he was denied a direct appeal, did not exist and therefore could not have been discovered by him in the weeks following his conviction. The time for direct appeal had not elapsed. The September 11, 2019 order granting Hooten's amended motion to withdraw as counsel was not provided to Garrett. As a result, Garrett was not aware that he was "on his own" for purposes of a direct appeal until on or about October 8, 2019, *after* the appeal deadline had passed, when he received a letter from Hooten along with a Notice of Appeal for his use. While Garrett was given notice of his appeal rights by the trial judge at sentencing and by the sentencing order,[2] he was not made aware that those rights were not being protected by his

---

[2]The trial judge informed Garrett on August 27, 2019 that he "was entitled to appeal the judgment just pronounced by filing your Notice of Appeal to a higher Court. Your

attorney until after the time to appeal had expired.  All he knew is that his attorney had filed a motion to withdraw as counsel.  The record is devoid of evidence concerning whether Hooten made efforts to notify Garrett that he had been relieved as counsel before the expiration of the time to appeal.  Likewise, there is no evidence of record concerning whether Garrett made efforts to contact Hooten to ensure that Hooten would file a timely notice of appeal.

Garrett concedes that he became aware of his claims on or about October 8, 2019:[3]

> Garrett first learned that he would be "on his own" on or about October 8, 2019, when he received a letter from his trial counsel so informing him and enclosing a *pro se* Notice of Appeal for Garrett to file by himself.  The Notice of Appeal prepared by counsel for Garrett was attached as Exhibit 3 to Garrett's belated appeal motion filed in the Arkansas Supreme Court.  *See* Respondent's Exhibit 7 (docket Entry 11).  (We are searching for the accompanying letter that counsel wrote to Garrett.)  Based on these facts and circumstances, the earliest that Garrett's one year limitations period would have started to run would have been on or about October 8, 2019 because that is the date the "factual predicate" of his claim "could have been discovered through the exercise of due diligence" under 28 U.S.C. §2244(d)(1)(D).

Petitioner's Reply, Doc. No.  26, page 2.

---

attorney can advise you on how to perfect this appeal.  This procedure must be accomplished within thirty days from the date of the judgment in this case or your right to appeal is lost forever."  Docket entry no. 11-14, page 348.

[3]Garrett, at another point, fixes the starting point of the limitations period as October 7, 2019.  Doc. No.  26, page 5.  This one day difference is not determinative.

Accepting October 8, 2019 as the commencement of the limitations period, the Court finds that Garrett had until October 8, 2020, to timely file his federal habeas petition, absent statutory or equitable tolling.[4]

### *Statutory Tolling*

"As with any question of statutory interpretation, the Court's analysis begins with the plain language of the statute" and "when the statutory language is plain, we must enforce it according to its terms." *Jimenez v. Quaterman*, 555 U.S. 113, 118 (2009) (citations omitted). The statutory language at issue here provides that the time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

In Garrett's case this language comes into play in two instances. First, Garrett sought Rule 37 relief in state court, filing his petition with the trial court on August 3, 2020. The petition was dismissed as untimely on September 17, 2020.

---

[4]Garrett argues that the date of filing his federal petition should be calculated using the "mailbox rule." *See Houston v. Lack*, 487 U.S. 266 (1988), and Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts. A petitioner bears the burden of proving his entitlement to the benefit of the mailbox rule. *Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001). Even generously assuming the applicability of the mailbox rule and assuming Garrett placed his petition in the prison mail system on October 13, 2020, the petition was still untimely.

Doc. No. 11-10.  The Rule 37 petition fits within the statutory description since Rule 37 is the typical path to postconviction relief in Arkansas – it is clearly an "application for State post-conviction or other collateral review with respect to the pertinent judgment."  In Arkansas, a Rule 37 petition is the appropriate avenue for postconviction review, and all grounds for postconviction relief are to be brought in a Rule 37 petition.  *See* Ark. R. Crim. P. 37.1(a), 37.2(b) (2007); *McCoy v. Norris*, No. 07-CV-1038, 2008 WL 5263645, at 2 (W.D. Ark. Dec. 18, 2008). However, the statute requires the application to be "properly filed" and an untimely Rule 37 petition fails this test.  As a result, the 45 days during which the Rule 37 petition was pending did not toll the statute of limitations because the petition was not "properly filed" as required by the plain language of the statute.  *Pace v. DeGuglielmo,* 544 U.S. 408, 417 (2005)(untimely state post-conviction petition is not a "properly filed application for State post-conviction or other collateral review" that would toll one year statute of limitations of § 2244(d)(2)).

Second, and more problematic, Garrett contends the time during which he was pursuing a belated appeal (the twenty day period from March 25 through April 14, 2020) should be excluded from the limitations period.  The statute requires the Court to answer a series of questions to determine whether the limitations period was tolled: one, was the motion for belated direct appeal "properly filed?"; two,

was the motion for belated direct appeal an "application for State post-conviction or other collateral review?"; and three, did the motion for belated direct appeal relate to "the pertinent judgment or claim?"  If all three of these questions are answered affirmatively, then the twenty day period would be excluded from the limitations period, and Garrett's federal habeas petition was timely filed.

With respect to the first of the three questions, the Court finds that Garrett's motion for belated direct appeal was properly filed  – Arkansas law allows eighteen months for the filing of such a motion, and Garrett timely filed the March 2020 motion in the proper forum with the Arkansas Supreme Court.  *See* Ark. R. App. P. Crim. 2(e).  The third question is also answered affirmatively – the motion for belated direct appeal was related to Garrett's judgment or claim.  With regard to the second question, however, the Court finds that the motion for belated direct appeal was not, under the plain language of the statute, an "application for State post-conviction or other collateral review."  Since post-conviction review in Arkansas is synonymous with Rule 37, the motion for belated direct appeal does not fit in the "post-conviction" category.  Ark. R. Crim. P. 37.1(a) describes the scope of Rule 37, while Ark. R. Crim. P. 37.2(b) provides that all grounds for relief must be raised in a Rule 37 petition.  *See also Calianno v. Hobbs*, 2013 WL 628595, at 2 (W.D. Ark. Jan. 28, 2013) ("In Arkansas, all grounds for

post-conviction relief are to be brought in a Rule 37 petition filed in the appropriate state circuit court.").  The remaining question, then, is if the motion for belated direct appeal was an application for "other collateral review."

The United States Supreme Court provides crucial guidance in determining whether Garrett's motion for belated direct appeal is an application for "collateral review" within the meaning of 28 U.S.C. § 2244(d)(2).  In *Wall v. Kholi*, 562 U.S. 545 (2011), the Court considered whether a Rhode Island state court motion to reduce sentence was an application for collateral review.  Noting that "collateral review" was not a defined term in the statute, the Court turned to the ordinary understanding of the phrase.  The Court found "collateral" ordinarily meant "indirect" or "ancillary," i.e., not part of direct review.  562 U.S. at 551-552. According to the Court, the meaning of "review" is best understood as "judicial reexamination."  Combining the two terms, the Court held the phrase "collateral review" in § 2244(d)(2) means "a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process."  562 U.S. at 553.  Since the Rhode Island motion to reduce sentence was not part of the direct review process, and since it required the trial judge to reexamine the sentence imposed, the Court found it qualified as an application for collateral review, triggering statutory tolling.

13

In Garrett's case, the Supreme Court's definition of collateral review yields a different result from that in *Wall v. Kholi*. Two key factors dictate this conclusion. First, Garrett's motion was related to the direct review process, not an ancillary or indirect proceeding. Both the style of Garrett's pleading and the substance of the pleading evidence his intent to secure a direct appeal of his conviction. The Arkansas rule itself provides relief for a failure to pursue a direct appeal, without reference to other proceedings.[5] "The Supreme Court may act upon and decide a case in which the notice of appeal was not given or the transcript of the trial record was not filed in the time prescribed, when a good reason for the omission is shown by affidavit." Ark. R. App. P. Crim. 2(e).

Second, the motion to file a belated direct appeal does not call for a reexamination of the sentence, as in *Wall*, where the statute directed the trial judge to consider at least five factors[6] to assess whether the sentence was appropriate.

---

[5]The Arkansas rule also applies to a failure to appeal a Rule 37 postconviction application. Garrett did not appeal his Rule 37 denial, nor did he file a motion for belated postconviction appeal. So this provision does not apply in this case. However, this Court has recognized that a properly filed motion for belated *postconviction* appeal tolls the limitation period. *Murry v. Norris*, No. 5:06CV00014 WRW, 2006 WL 1342809, at 4 (E.D. Ark. May 16, 2006). This highlights the meaningful distinction between direct and postconviction proceedings.

[6]The Rhode Island trial judge was to examine several factors, including the severity of the crime, the defendant's background and potential for rehabilitation, the element of social deterrence, and the appropriateness of the punishment. 562 U.S. at 556.

Instead, only one question is posed by Garrett's motion, and this question does not involve the judgment or sentence – does good reason exist for the failure to properly appeal?  Arkansas cases dealing with motions for belated direct appeal consistently consider only whether good reason was established for the failure to appeal.  *See McDonald v. State*, 356 Ark. 106, 111 (2004); *Porter v. State*, 287 Ark. 359, 360 (1985); and *Jones v. State*, 334 Ark. 236, 236-237 (1998).  These cases do not delve into the merits of any claims which might be raised if the belated appeal is granted.  Thus, the motion for belated direct appeal provided Garrett a limited opportunity to establish why he failed to properly appeal.  The motion for belated direct appeal did not invite reexamination, or review, of Garrett's judgment or claim.

The Eighth Circuit Court of Appeals has not had occasion to interpret *Wall v. Kholi* and has not squarely addressed the question of statutory tolling during the pendency of a motion for belated direct appeal.[7]  Other Circuits have interpreted *Kholi* with regard to various state court motions, with differing outcomes.  The

---

[7]In 2006, the Court, for the fourth time, was faced with this issue.  "Thrice before we have alluded to this issue, but for various reasons have not yet directly resolved it. *See Watts v. Norris*, 356 F.3d 937, 942 (8th Cir.2004); *Wright v. Norris*, 299 F.3d 926, 928 (8th Cir.2002); *Mills v. Norris*, 187 F.3d 881, 884 n. 4 (8th Cir.1999). This case makes a fourth time, as we affirm the district court's dismissal . . . on an alternative ground."  *Lewis v. Norris*, 454 F.3d 778, 779 (8th Cir. 2006).

general trend of these cases is that motions to reduce, review, revise, or modify a

sentence have been reckoned to be collateral review applications.[8]  On the other

hand, Courts guided by *Kholi* have regarded the following motions as *not* collateral

in nature: to stay execution; for postconviction discovery or for appointment of

counsel; for belated postconviction appeal; for DNA evidence; for transcripts and

exhibits; and to reinstate postconviction proceedings.[9]

The case most comparable, and most instructive, is the Eleventh Circuit

Court of Appeals' consideration of a Florida motion for belated direct appeal.  In

*Danny v. Secretary, Florida Department Of Corrections*, 811 F.3d 1301 (11th Cir.

2016), the Court held that Danny's pending motion for belated direct appeal did

not toll the federal limitations period.  Danny entered a guilty plea in September

2010 and filed a petition for belated direct appeal in February 2011, arguing that

---

[8]E.g., a motion to reduce sentence in Rhode Island, Florida, Maryland, Massachusetts, Wyoming, Montana, Oklahoma, Georgia, and Colorado are deemed to be collateral review petitions.  *See Wall v. Kholi, supra; Rogers v. Secretary, Department of Corrections*, 855 F.3d 1274 (11th Cir. 2017) (Florida); *Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019) (Maryland); *Holmes v. Spencer*, 685 F.3d 51 (1st Cir. 2012) (Massachusetts); *Najera v. Murphy*, 462 F.App'x 827 (10th Cir. 2012) (Wyoming); *Branham v. Montana*, 996 F.3d 959 (9th Cir.), cert. denied, 142 S. Ct. 454 (2021) (Montana); *Doby v. Dowling*, 632 F. App'x 485 (10th Cir. 2015) (Oklahoma); *Westmoreland v. Warden,* 817 F.3d 751 (11th Cir. 2016) (Georgia); and *Lomax v. Davis*, 484 F. App'x 206 (10th Cir. 2012) (Colorado).

[9]*See Blue v. Medeiros*, 913 F.3d 1 (1st Cir. 2019); *Collins v. Ercole*, 667 F.3d 247 (2nd Cir. 2012); *Espinosa v. Sec'y, Dep't of Corr.*, 804 F.3d 1137 (11th Cir. 2015); *Woodward v. Cline*, 693 F.3d 1289 (10th Cir. 2012); *Levering v. Dowling*, 721 F. App'x 783 (10th Cir. 2018); and *Cantu v. Fla.*, 778 F. App'x 760 (11th Cir. 2019), respectively.

his attorney had disregarded his instructions to file a motion to withdraw the plea and a notice of appeal.   The motion for belated direct appeal was decided in October 2011.   Danny's federal habeas corpus petition would have been timely filed had the motion for belated direct appeal operated to toll the limitations period. As in this case, the pivotal question was whether the petition for belated direct appeal qualified as an "application . . . for State collateral review."   28 U.S.C. § 2244(d)(2).   Citing *Kholi*, *supra,* and its interpretation of "collateral review," the Court determined that Danny's petition for belated direct appeal did not invite "a judicial reexamination of a judgment or claim."   811 F.3d at 1304.   Instead, the Court noted that a Florida motion for belated direct appeal, if successful, only revived a petitioner's right to pursue a direct appeal.   This is consistent with the Arkansas rule – had Garrett succeeded with his motion for belated direct appeal, he would have only won the right to an appeal.   "In contrast, to qualify for statutory tolling, a collateral pleading must 'request[ ] . . . judicial review of a judgment and . . . provide a state court with authority to order relief from a judgment.'   *Kholi*, 131 S.Ct. at 1286 n.4.   Danny's petition did neither."   *Id.*   For the same reasons, Garrett's motion for belated direct appeal did not qualify as an application for collateral review under 28 U.S.C. § 2244(d)(2).

Garrett urges the Court to go a different direction and follow *Board v. Bradshaw*, 805 F.3d 769 (6th Cir. 2015), and other Sixth Circuit Court of Appeals cases.  In *Board*, the Court found that a petitioner's motion for leave to file late notice of appeal tolled the federal habeas limitations period. Ohio Appellate Rule 5(A) allows a petitioner to seek leave to appeal and directs the petitioner to "set forth the reasons" for his failure to perfect an appeal as of right. Ohio App. Rule 5(A)(2).  The Ohio rule is similar to Ark. R. App. P. Crim. 2(e) and to the Florida rule at issue in *Danny*, but has no time limit for filing motions for leave to file a delayed appeal.  *Board v. Bradshaw*, 805 F.3d at 773.  The holding in *Board* is straightforward and departs from *Danny*, finding that an Ohio motion for leave to file a delayed appeal is *not* part of the direct review process.  Instead, the Court deemed the motion to be a "collateral" application under the federal statute, tolling the limitations period.  The *Board* decision cites a string of Sixth Circuit opinions, beginning with *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001), holding an Ohio motion for delayed appeal to be an application for collateral relief that tolled the limitations period.  *See also Anderson v. Brunsman*, 562 Fed.Appx 426 (6th Cir. 2014), *Applegarth v. Warden N. Cent. Corr. Inst.*, 377 Fed.Appx. 448 (6th Cir. 2010), and *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006).

The Eleventh Circuit's decision in *Danny*, founded upon *Kholi's* analysis of the statutory language, persuades the Court that Garrett's motion to file a belated direct appeal did not toll the limitations period.  In declining to follow *Board,* the Court notes that three of the four cases cited by the Sixth Circuit (*Searcy* in 2001, *DiCenzi* in 2006, and *Applegarth* in 2010) predate *Kholi*.[10]  Further, the *Board* decision does not discuss *Kholi*.[11]  *Board* and other Sixth Circuit cases do not compel the result Garrett seeks.

Payne argues that *Jimenez v. Quarterman*, 555 U.S. 113 (2009) and *Streu v. Dormire*, 557 F.3d 960 (8th Cir. 2009) compel a finding that the limitations period was not statutorily tolled while Garrett's motion was pending.  The Court need not, and does not, rely on these cases.

In *Jimenez*, the United States Supreme Court considered a Texas state habeas corpus petition which resulted in the granting of a belated appeal for the petitioner.

---

[10]In an opinion which also predated *Kholi* the Eighth Circuit Court of Appeals invited clarification of the nature of the motion for belated direct appeal from the Arkansas Supreme Court.  "[i]t will help the federal courts in Arkansas apply AEDPA's one-year statute of limitations in the future if the Supreme Court of Arkansas further clarifies" if the motion for belated appeal is part of the ordinary appellate review procedure. *Wright v. Norris*, 299 F.3d 926, 929 n. 3 (8th Cir. 2002).  While clarification from the Arkansas Supreme Court has not been forthcoming, the Court finds that *Kholi* amply clarifies the proper view of a motion for belated direct appeal.

[11]In a later unreported decision, the Sixth Circuit Court of Appeals made clear that not all motions are collateral petitions tolling the limitations period.  Citing *Kholi*, the Court noted that filings which do not attack the underlying judgment would not toll the limitations period. *Fears v. Noble,* 2018 WL 1401806 (6th Cir. Feb. 14, 2018).

The question was whether the granting of a motion for belated direct appeal might change, or reset, the date on which a judgment was deemed "final" under § 2244(d)(1)(A). The Court found that the granting of a motion for belated appeal restored the pendency of the appeal, resulting in a new "final" date of judgment. 555 U.S. at 120. The Court stressed the limited nature of the decision:

> Our decision today is a narrow one. We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet "final" for purposes of § 2244(d)(1)(A). In such a case, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal.

555 U.S. at 121.

Payne stresses the *Jimenez* phrase that granting the motion for belated direct appeal *restores the pendency* of the appeal. While Payne is technically correct, the restoration of an appeal is not the issue before the Court. Garrett sought but was denied his belated direct appeal. Had he succeeded in his motion for belated appeal, *Jimenez* dictates his appeal would have been restored and the date on which his conviction became final would have been re-calculated. Thus, *Jimenez* provides an academic exercise on what might have been if Garrett's motion had been granted. The answer is that, under § 2244(d)(1)(A), the pendency of Garrett's

appeal would have been restored. The pendency of his appeal is not the issue, however. The relevant provision is § 2244(d)(2), and the relevant question is whether Garrett's pending motion for belated direct appeal tolled the limitations period. A clear distinction between the *pendency of his appeal* and the *pendency of his motion* is necessary. The narrow holding of *Jimenez* addressed the finality of a conviction but does not answer the question regarding the tolling effect of Garrett's motion for belated direct appeal.[12]

Like *Jimenez, Streu v. Dormire*, 557 F.3d 960 (8th Cir. 2009) is educational but does not address whether an Arkansas motion for belated direct appeal tolls the limitations period. In *Streu*, a Missouri petitioner filed a motion for leave to file a belated notice of appeal of the denial of his state *postconviction* petition. Streu's motion for leave was granted and he filed a notice of appeal with respect to his postconviction application. When he later sought federal habeas corpus relief, one of the issues was whether the limitations period was tolled by the filing of his motion for leave to file a belated notice of appeal. The Court held that Streu's motion to reopen state postconviction proceedings was "a properly filed

---

[12]Any temptation to suggest that Garrett's motion for belated direct appeal was not "pending" unless and until it was granted runs counter to the proposition which began the Court's analysis – reliance upon the plain statutory language and the ordinary meaning of the word "pending." Upon filing, Garrett's motion for belated appeal was pending for twenty days until denied.

application for State post-conviction or other collateral review" and, as such, the limitations period was tolled while the motion was pending. This holding, however, sheds no light on whether Garrett's motion for belated *direct* appeal pauses the limitations clock. Streu's petition was clearly a postconviction application fitting neatly in the statutory framework. As a result, the *Streu* Court did not consider the possible tolling effect of a motion for belated *direct* appeal.

In summary, *Wall v. Kholi*, 562 U.S. 545 (2011), provides the most useful framework for analyzing Garrett's motion for belated direct appeal and its effect on the limitations period. Such a motion is not one for "other collateral review" under

the statute. Consequently, Garrett's motion for leave to file belated direct appeal did not trigger statutory tolling.[13] [14]

### Equitable Tolling

The Court recognizes that equitable tolling may provide an excuse for the failure to file a timely federal habeas petition under some circumstances:

> Equitable tolling is appropriate where extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time, or where a defendant's conduct lulls the prisoner into inaction. *Id.* The doctrine applies "only when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay." *Flanders v. Graves,* 299 F.3d

---

[13]The Court is also aware of an unpublished 2012 opinion authored by United States Magistrate Judge Jerome T. Kearney, where this Court declined to toll the limitations period after the filing of an Arkansas motion for belated appeal:

> In this case, Petitioner's motions for belated appeal did not toll the statute of limitations. *Jimenez v. Quarterman*, 555 U.S. at 120 (a timely and successful motion for belated appeal restores the pendency of the direct appeal process); *Young v. Hobbs*, 2011 WL 1480312, at 3 E.D. Ark. Mar. 29, 2011); *Shoemate v. Norris*, 2003 WL 23989923, at 6 (E.D. Ark. July 25, 2003) (holding "a motion for belated appeal does not equate with an appeal. No appeal would be pending until—and unless—the motion was granted."). Thus, the petition is barred as untimely.

*Gray v. Hobbs*, No. 5:10CV00218 JTK, 2012 WL 1648401, at 3 (E.D. Ark. May 10, 2012).

The *Gray* opinion reaches the same result as in this Finding and Recommendation, but based upon a different approach.

[14]Garrett also argues that the doctrine of comity requires this Court to toll the limitations period based upon the mere filing of his motion for belated appeal. While the statute's goal of promoting comity, finality, and federalism is promoted by giving state courts the initial opportunity to address claims and correct constitutional errors, comity is not so broadly construed to cover every filing in state court to toll the limitations period.

> 974, 977 (8th Cir.2002). Equitable tolling is an "exceedingly narrow
> window of relief." *(Citation omitted).*

*Maghee v. Ault*, 410 F.3d 473, 476 (8ᵗʰ Cir. 2005). The Court must determine if Garrett's failure to file a timely federal petition should be excused due to equitable tolling.

Garrett contends he was diligent in pursuing his rights and that he was lulled into inaction by the Arkansas procedure for seeking a belated appeal. This argument is without merit.

Garrett made efforts in state court, as outlined in the timeline herein. Notably, he took some steps toward a belated appeal in December 2019 and in March 2020. The denial of his motion for belated appeal on April 14, 2020 concluded his pursuit of a direct appeal well in advance of the expiration of the federal limitations period. Garrett's Rule 37 petition was both filed and decided prior to the expiration of the federal limitations period (filed on August 3, 2020, and denied on September 17, 2020). Even assuming that Garrett was under the mistaken impression that he had to await decisions from the Arkansas courts he still had time to file his federal petition in a timely fashion. More importantly, Garrett cannot cite his state court efforts to establish diligence regarding the filing of his federal petition because he could have protectively filed his federal petition

while proceeding in state court.[15]  *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), and *Gordon v. Arkansas*, 823 F.3d 1188, 1195 n.4 (8th Cir. 2016).  Though Garrett may be credited for some state court efforts, he did not exercise the diligence required to warrant equitable tolling.  A petitioner must make "good use of the time available to him within the limitations period . . . to justify equitable tolling."  *Coulter v. Kelley*, 871 F.3d 612, 623 (8th Cir. 2017) judgment vacated, appeal dismissed, 876 F.3d 1112 (8th Cir. 2017).

In addition, the Arkansas procedure for seeking a belated appeal did not lull him into inaction that excuses his tardy filing.  Garrett does not expand greatly on this argument.  The Arkansas procedure is not inherently deceptive.  In addition, the eighteen month time frame in which to file a motion for belated appeal does not lull a petitioner into inaction.  There is no shortage of post-conviction and collateral proceedings in Arkansas and elsewhere, and there is no requirement that the time limits with these proceedings mirror the one year federal limitations period.  The available time frame in which to file the motion for belated direct appeal is not a factor which activates equitable tolling.

---

[15]In Arkansas, a motion for belated appeal can be filed within eighteen months after a conviction.  A federal petitioner could therefore file a timely motion for belated appeal in state court *after the expiration of the federal limitations period*.  A petitioner claiming diligence under those circumstances would not be entitled to equitable tolling since he neglected to act in federal court during the limitations period. *See Painter v. Iowa*, 247 F.3d 1255 (8th Cir. 2001) (no limitations period to toll after the one-year period has run).

Garrett next argues that *Holland v. Florida*, 560 U.S. 631 (2010) works in concert with *Martinez v. Ryan*, 566 U.S. 1 (2012) and *McQuiggin v. Perkins*, 569 U.S. 383 (2013), to equitably toll the limitations period. Equitable tolling was warranted in *Holland* because the court-appointed attorney for the petitioner failed to file a timely federal habeas corpus petition. The petitioner's diligence was demonstrated by repeated letters to his attorney, which typically went unanswered, as well as legal research performed by the petitioner and letters to the Florida Supreme Court. Both the attorney's failures and Holland's efforts extended over the better part of five years. Notably, Holland's attorney also provided blatantly incorrect advice about the running of the limitations period. Noting that a "garden variety claim" of attorney negligence would not warrant equitable tolling, the Supreme Court found Holland's attorney's misconduct to be egregious, satisfying the test for equitable tolling. 560 U.S. at 652.

To the extent that Garrett relies upon *Holland* to establish equitable tolling, this argument is without merit. Unlike in *Holland*, Hooten's acts and omissions did not extend throughout the limitations period. Hooten's interaction with Garrett concluded around November 1, 2019. Also, Garrett's diligence did not match that of the petitioner in *Holland*. The result is that there was no causal connection between Hooten's behavior in September-November 2019 and Garrett's inablity to

file his federal petition in a timely fashion on or before October 8, 2020. To the contrary, Garrett could have filed a timely federal petition in spite of Hooten's withdrawal from his criminal case.

It appears that the general notion underlying Garrett's argument regarding *Holland, Martinez,* and *McQuiggin* is that the doctrines espoused in *Martinez* and *McQuiggin* excuse some types of procedural defaults and they should likewise excuse a petitioner from his failure to timely file his federal petition. The Court understands Garrett's arguments as an invitation to extend *Martinez* and *McQuiggin* because Hooten's acts and omissions produced a result worse than the result in *Holland*.

Garrett's argument fails for two reasons.

First, these cases, both dealing with procedural default and not with equitable tolling, are exceedingly narrow holdings by their own terms. The *Martinez* Court emphasized it was recognizing a "narrow exception" whereby cause for procedural default might be shown by proving inadequate assistance of counsel at an initial postconviction proceeding,, and the *McQuiggin* Court stressed that the actual innocence exception it was recognizing might overcome a procedural default but the exception would be "rare" and seldom met. 566 U.S. at 9, and 569 U.S. at 386.

27

The admittedly narrow nature of these cases render them unsuitable candidates as a foundation for expanding the doctrine of equitable tolling as urged by Garrett.

Second, the Eighth Circuit explicitly rejected the argument that actual innocence should warrant equitable tolling because it excuses some procedural defaults.  *See Flanders v. Graves*, 299 F.3d 974 (8th Cir. 2002):

> Petitioner argues that [the doctrine of actual innocence], which excuse[s] some types of procedural defaults, should likewise excuse his failure to file his petition within the period fixed by Act of Congress, a failure which he characterizes as a similar "procedural default." We cannot agree with this assertion, at least as a broad concept. We are dealing here with a statute. It is our duty to apply statutes as written. The statute fixes a one-year period of limitations, and says nothing about actual innocence, even though other parts of AEDPA, enacted at the same time, do refer to this doctrine. Compare 28 U.S.C. § 2244(d)(1), with 28 U.S.C. § 2244(b)(2)(B)(ii). It is not our place to engraft an additional judge-made exception onto congressional language that is clear on its face.

299 F.3d at 977.  The Court also notes that Garrett does not argue actual innocence in this matter.

In summary, equitable tolling is infrequently appropriate, and requires extraordinary circumstances beyond a prisoner's control which made it impossible to file a petition on time.  In addition to alleged errors made by Hooten and the trial court, Garrett made unfortunate choices in navigating his way through state court proceedings.  There were, however, no "extraordinary circumstances beyond [his]

control that made it impossible for him to file a timely [federal habeas] petition, and nothing in [the state's] conduct can be said to have lulled [him] into inaction." *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8ᵗʰ Cir. 2003). *See also Shoemate v. Norris*, 2003 WL 23989923 (E.D. Ark. July 25, 2003) (*pro se* status, lack of legal knowledge or legal resources, confusion about or miscalculation of the limitations period, or failure to comprehend the ramifications of previous postconviction actions are inadequate to warrant equitable tolling).  Equitable tolling does not apply in this case.

## Conclusion

A number of issues are *not* before the Court.  For example, should Hooten have filed a notice of appeal on Garrett's behalf?  Should the trial court have appointed substitute counsel for Garrett's appeal?  Should the Order granting Hooten's motion to withdraw have been served on Garrett?  Was Garrett entitled to a direct appeal with the assistance of counsel? On what basis did the Arkansas Court of Appeals deny Garrett's motion for belated appeal?   And unfortunately, these questions cannot be addressed in this matter.

The precise issues before the Court are whether Garrett filed a timely petition and, if not, whether his untimeliness was excusable.   Garrett's petition was untimely, and neither statutory nor equitable tolling excuse his tardiness.   As a

result, the Court recommends that the petition be dismissed as untimely and the relief requested be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this 25th day of May, 2022.

_____
UNITED STATES MAGISTRATE JUDGE